UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HOSAM ZAKARIA,

    Plaintiff,

    v.

THE UNITED STATES POSTAL
INSPECTION SERVICE,

    Defendant.

Civil Action No. 01-416 (CKK)

**FILED** ✓

NOV 1 3 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This case comes before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Plaintiff filed the instant action on February 26, 2001, alleging violations of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Both parties contend that there remain no genuine issues of material fact in the instant case. Specifically, Defendant United States Postal Inspection Service (Inspection Service) asserts that its search for records responsive to Plaintiff's request is adequate and avers that it has been unable to locate any records responsive to Plaintiff's request. Plaintiff insists that the records he seeks are in Defendant's possession and therefore, asserts that Defendant's search is inadequate. Upon consideration the relevant motions and responses thereto, the Court concludes that Defendant's motion should be granted and Plaintiff's motion must be denied.

## I. FACTS

Plaintiff filed a FOIA request with the Inspection Service on November 27, 2000. Pl. Stmnt. of Material Facts (Pl. Stmnt.) ¶ 1. Plaintiff's request sought all information the Postal Service possessed in its records and files pertaining to the requestor, including tape recordings

and transcripts of the same. *Id.* Defendant acknowledged Plaintiff's request by letter dated December 11, 2000. Def. Mem. at 7. Upon receipt of Plaintiff's request, Ms. Eyer conducted a preliminary search of the Inspection Service database. Pl. Stmnt. ¶ 19. Ms. Eyer found nothing to indicate that Plaintiff had been the subject of an Inspection Service Investigation. *Id.* Ms. Eyer requested that Plaintiff furnish additional information that would assist in the search. Def. Mem. at 7. Despite the provision of additional information by Plaintiff, no responsive records have been found by the agency. Pl. Stmnt. ¶ 21. Unsatisfied with Defendant's response to his request, Plaintiff filed the instant suit.

As noted above, Plaintiff's November 27, 2000, request was not his first request for documents. Since December of 1998, Plaintiff has filed a number of FOIA requests seeking information related to his prosecution in the United States District Court for the Eastern District of Virginia. Def. Stmnt of Material Facts (Def. Stmnt.) ¶ 2. Upon receipt of Plaintiff's initial request in December of 1998, Ms. Jane Eyre, an Information Specialist in the Office of Counsel, searched the Inspection Service Database Information System for Plaintiff's name, and was unsuccessful in locating any documents. ¶ 3. On January 25, 1999, Ms. Eyre inquired of the Inspection Service Crime Laboratory as to whether they knew of Plaintiff or if they had any records concerning him. *Id.* ¶ 4. James Foye of the Crime Laboratory advised Ms. Eyre that he did not know Plaintiff, and needed either an inspector's case number or Crime Laboratory number to search for records pertaining to Plaintiff. *Id.* Accordingly, the Inspection Service requested such information from Plaintiff and received a DEA file number, as well as a number that Plaintiff believed to be a postal crime number. *Id.* ¶¶ 6-7. The DEA file number was not useful in searching for records. Defendant ran the purported postal crime number through the

2

system and was unable to find anything related to Plaintiff. *Id.* ¶ 7. The number was not an Inspection Service Crime Laboratory file number and therefore, was not useful in searching for records. Plaintiff's then-attorney was advised via letter dated January 27, 1999, and phone conversation on February 24, 1999, of the results, or better-stated, the lack thereof. Def. Mem. at 3.

After a series of letters through 1999 and 2000, Defendant also searched the names of Agent Rudolph C. Goddard and Assistant United States Attorney Mark Hulkower through the system, but did not locate any relevant records. *Id.* ¶ 8. Following confirmation that no records or tapes had been located, Plaintiff corresponded with the Inspection Service throughout 1999 and 2000 seeking further confirmation and reconfirmation of the absence of any records. Each time the Inspection Service informed Plaintiff that no responsive records had been located. Def. Mot. 2-7.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) requires a court to grant judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although the court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible

evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See id.* at 247-48; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In FOIA cases, "to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency may demonstrate its reasonable efforts by submitting affidavits that explain the method and scope of its search. *Id.* This Circuit has consistently "embrace[d] the congressional purpose of open government." *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). This fundamental principle weighs heavily in determining the "adequacy" of the search performed. *See id.*; *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). If, after examining the record in light of this principle, "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Campbell*, 164 F.3d at 27 (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

Defendant argues that it is entitled to summary judgment because it has conducted a reasonable search and has not located any responsive records. Plaintiff "challenges the sufficiency of Defendant's FOIA search." Pl. Opp. at 16. Plaintiff's basis for this assertion is his persistent belief that responsive records exist, despite the failure of the Inspection Service to locate such records. *Id.*

Although Defendant is required to "make more than perfunctory searches, and indeed, to follow through on obvious leads to discover requested documents," *Valencia-Lucena*, 180 F.3d at 390, this Circuit has recognized "there are some limits on what an agency must do to satisfy its

4

FOIA obligations." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995); *see AFGE v. United States Dep't of Commerce*, 907 F.2d 203, 139 (D.C. Cir. 1990) ("While [the requests] might identify the documents requested with sufficient precision . . . it is clear that these requests are so broad as to impose an unreasonable burden upon the agency."); *Oglesby v. United States Dep't of Army*, 79 F.3d 1172, 1186 (D.C. Cir. 1996) (finding it reasonable to require more specific information to search files that are not indexed according to information requested) ("*Oglesby II*"); *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000). When evaluating the adequacy of a search, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Steinberg v Department of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original). The adequacy of the search is judged by a standard of reasonableness and depends upon the facts of each case. *Id.* An agency's demonstration of the adequacy of the search may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith. *Id.* Upon receipt of such an affidavit, a district court reviews the record to see if it has a "substantial doubt" as to the veracity of the search. *See Valencia-Lucena*, 180 F.3d at 326.

Defendant offers evidence that Inspection Service records are accessible by name and/or social security number. Katz Decl. ¶ 29. Investigative files may contain investigative reports, notes, memoranda, background data including arrest records, statements of informants and witnesses, laboratory reports of evidence analysis, search warrants, summons, and subpoenas, and other information related to an investigation. *Id.* Records pertaining to consensual electronic surveillance are also covered by the Investigative File System and are located within

5

the investigative files. *Id.* The Investigative Service Database System contains additional or summary duplication case files and other information in support of investigation. *Id.* Records are maintained for between one and five years depending on type. *Id.*

Defendant has conducted searches for Plaintiff's name and has made inquiries based upon Plaintiff's name. *Id.* Defendant has explained that searches for records generally require an inspector's case number, and that such case number has not been provided to Defendant. *Id.* ¶ 34. Defendant has conducted searches of any and all information provided by Plaintiff relevant to his FOIA request, including a search of a purported "crime number" and the names of an agent and an assistant United States Attorney and has located no responsive records. *Id.* None of these searches located responsive documents.

Defendant considered providing Plaintiff with a list of every tape analysis conducted from April 1991 through July 1991. However, Defendant determined that provision of such a list was not feasible, as the electronic databases would not permit such a printout, and that to provide the list manually would require pulling up thousands of individual files one by one. *Id.* Defendant further anticipated that even if such a list were compiled, the information could not be provided to Plaintiff because of "third-party privacy reasons." *Id.*

In *Nation Magazine*, the court found it unreasonable and unduly burdensome to require an agency to manually search twenty-three years of unindexed files relating to one individual. 71 F.3d at 892. Here, Plaintiff requests that Defendant manually search "thousands of files in [a] database" in order to locate the record Plaintiff believes to be in Defendant's possession. The Court finds such a request unreasonable and unduly burdensome in light of the resources which would be required to perform such a search. Thus, while the Court acknowledges that

6

Defendant's files may indeed contain the requested documents, the specific search requested is neither reasonably calculated, nor unimposing of an undue burden. *See Oglesby*, 920 F.2d at 68; *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978). Accordingly, the Court shall not require Defendant to perform such a search.

Beyond his general claim that Defendant has not provided the responsive documents, Plaintiff's opposition to Defendant's motion focuses largely upon an allegation that Defendant is withholding responsive documents. In this regard, Plaintiff's opposition appears to raise an argument regarding Defendant's compliance with 39 U.S.C. § 410(b), 39 C.F.R. § 265.6(c)(1) and 5 U.S.C. § 552(b)(7)(B). Section 410(b) of Title 39 merely provides that FOIA is applicable to the Postal Service, a fact which Defendant does not dispute. Section 552(b)(7)(B) is an exemption which may be invoked to protect the release of certain documents. As Defendant did not locate any responsive documents, it has not invoked any of the FOIA exemptions to justify withholding any documents. Thus, any argument based upon an alleged withholding is not relevant in this context. The regulation cited by Plaintiff is a Postal Service regulation which appears to provide an exemption similar to Exemption 7(B). Again, because Defendant has not withheld the release of any documents, Plaintiff's reliance upon this regulation is misplaced.

Plaintiff's motion for summary judgment also requests a *Vaughn* index. The purpose of a *Vaughn* index is to facilitate the district court's review of exemptions claimed by an agency withholding documents. Specifically, when an agency withholds documents it may be required to prepare a *Vaughn* index that catalogs the documents withheld and correlates them to specific FOIA exemptions. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In the instant case, Defendant has not withheld documents based on any FOIA

7

exemption. Rather, Defendant simply has not located any responsive documents. Accordingly, Plaintiff's request for a *Vaughn* index is without rational basis and shall be denied.

.

### III. CONCLUSION

In sum, the Court finds that Defendant has fulfilled its obligation pursuant to FOIA to conduct a search reasonably calculated to locate records responsive to Plaintiff's request. There is no evidence in the record which indicates that Defendant has acted in bad faith or has withheld responsive documents. Based on the foregoing, the Court shall grant Defendant's motion for summary judgment. Likewise, the Court shall deny Plaintiff's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

November 13, 2001

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge